UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| BRICKMAN INVESTMENTS INC., Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| vs. | JURY TRIAL DEMANDED |
| WELLS FARGO & COMPANY and WELLS FARGO CLEARING SERVICES, LLC dba WELLS FARGO ADVISORS, | |
| Defendants. | |

---

By and through its undersigned counsel, Brickman Investments Inc. ("Plaintiff") brings this class action against defendant Wells Fargo & Company ("Wells Fargo") and its majority-owned subsidiary, defendant Wells Fargo Clearing Services, LLC dba Wells Fargo Advisors ("WFA") (collectively, "Defendants"), upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, including, without limitation, review and analysis of: (a) documents created and distributed by Defendants; (b) public filings made by Wells Fargo with the U.S. Securities and Exchange Commission ("SEC"); (c) press releases disseminated by Defendants; and (d) news articles, websites, and other publicly available information concerning Defendants.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this class action to recover damages arising out of Defendants' unlawful conduct related to Wells Fargo's Bank Deposit Sweep Program ("Sweep Program"), which transferred idle customer cash into interest-bearing "cash sweep" accounts.  Plaintiff and the Class members (defined below) were customers of WFA whose funds were transferred to cash sweep accounts under the Sweep Program.

2.      Under the Sweep Program, WFA swept customers' idle cash deposits into separate accounts that were highly lucrative for Defendants and their affiliate banks but paid unreasonably low, below-market interest rates to customers.  As such, Defendants used the Sweep Program to generate massive revenue for themselves at the expense of their customers.

3.      Defendants made materially misleading statements and omissions to customers about the Sweep Program, including statements that Defendants were negotiating "reasonable"

interest rates on behalf of customers when in fact they were working with affiliated banks to pay unreasonably low interest rates.

4.      Defendants' material statements and omissions regarding the Sweep Program, and use of the Sweep Program to enrich themselves by paying unreasonably low interest rates to customers, violated federal law including the Investment Advisers Act of 1940 ("Advisers Act"), the Racketeer Influenced and Corrupt Organizations Act ("RICO Statute"), and breaches of their fiduciary duties and contractual obligations to customers.

5.      Accordingly, Defendants' Sweep Program has come under federal regulatory scrutiny, forcing them to take corrective actions.  In October 2023, Defendants disclosed that their cash sweep practices were under investigation by the SEC.  In July 2024, Defendants announced that they were in discussions to resolve the SEC investigation and were changing the Sweep Program to pay customers higher interest rates, resulting in an estimated loss of $350 million in Wells Fargo's annual revenue.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) and (6), because: (a) there are 100 or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (c) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court also has subject matter jurisdiction under 18 U.S.C. §1964(c), 28 U.S.C. §1331, and 50 U.S.C. §80b-14 because Plaintiff brings claims arising under the RICO Statute, 18 U.S.C. §1962, and the Advisers Act, 50 U.S.C. §§80b-1-21.

7.      This Court has personal jurisdiction over Defendants because, during the relevant time period, Defendants had offices in, did sufficient business in, had sufficient contacts with, and

intentionally availed themselves of the laws and markets of New York through the promotion, sale, marketing, distribution, and operation of their products and services.

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because, during the relevant time period, Defendants transacted business and had offices in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

9.      In connection with the challenged conduct, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, without limitation, the United States mails and interstate telephone communications.

## PARTIES

**Plaintiff**

10.      Plaintiff Brickman Investments Inc. is a Delaware corporation headquartered at 712 Fifth Avenue, New York, New York 10019.  During the relevant time period, Plaintiff was a WFA account holder.  As a WFA account holder, Plaintiff's uninvested cash was swept into the banks that Defendants selected in their discretion at the unreasonably low interest rates alleged herein pursuant to the Sweep Program.

**Defendants**

11.      Defendant Wells Fargo & Company is a Delaware corporation headquartered at 420 Montgomery Street, San Francisco, California 94104.  Wells Fargo is a financial services company that conducts business throughout the United States, with assets totaling $1.9 trillion, loans totaling approximately $936.7 billion, and 226,000 employees.  Wells Fargo states that it "provide[s] a diversified set of banking, investment and mortgage products and services, as well as consumer and commercial finance, through banking locations and offices."  Wells Fargo is the parent company and control person of Defendant WFA.

- 3 -

12.    Defendant Wells Fargo Clearing Services, LLC dba Wells Fargo Advisors is a Delaware limited liability company headquartered at One North Jefferson Avenue, St. Louis, Missouri 63103.    WFA is a broker-dealer and a Registered Investment Advisor that offers brokerage and investment advisory services to its nationwide client base.    WFA acts as its customers' agent for the establishment, maintenance, and operation of the Sweep Program.    WFA is a majority-owned subsidiary of, and controlled by, Defendant Wells Fargo.

## SUBSTANTIVE ALLEGATIONS

**Background on Defendants' Sweep Program**

13.    Wells Fargo is one of the largest financial services firms in the country.    Wells Fargo's majority-owned subsidiary, WFA, offers brokerage and investment advisory services to customers nationwide.    Wells Fargo owns 75% or more of WFA and controls the management and policies of WFA.

14.    Defendants provide the Sweep Program to WFA customers.    The terms and conditions of the Sweep Program are set forth in WFA's General Account Agreement and Disclosure Document ("Account Agreement")[1] and Cash Sweep Program Disclosure Statement ("Cash Sweep Statement")[2] (collectively, "Sweep Program Documents").

15.    Under the Sweep Program, WFA automatically sweeps eligible clients' uninvested cash balances into interest bearing deposit accounts with a network of bank partners selected by Defendants ("Program Banks"), including banks affiliated with Defendants ("Affiliated Banks") and unaffiliated with Defendants ("Unaffiliated Banks").    The "Standard Bank Deposit Sweep"

---

[1]    Wells    Fargo,    *General    Account    Agreement    and    Disclosure    Document*, https://www.wellsfargoadvisors.com/bw/wellstrade/forms/589852.pdf (Sept. 2024).

[2]    Wells    Fargo,    *Cash    Sweep    Program    Disclosure    Statement*, https://www.wellsfargoadvisors.com/bw/forms/578326.pdf (Sept. 2024).

involves only Affiliated Banks while the "Extended Bank Deposit Sweep" involves Affiliated Banks and Unaffiliated Banks.

16.    The Sweep Program Documents state that WFA "will act as [a customer's] agent in establishing and maintaining the Bank Deposit Sweep Programs . . . .  [The customer's] first deposit into the Standard Bank Deposit Sweep or Expanded Bank Deposit Sweep will constitute [his or her] appointment of Wells Fargo Advisors as [his or her] agent[.]"[3]

17.    The sweep interest rates paid to customers are set by Affiliated Banks "in consultation with Wells Fargo Advisors."[4]  WFA then directs Unaffiliated Banks to use the same interest rates set by the Affiliated Banks.[5]

**Defendants Reaped Significant Benefits from the Sweep Program to the Detriment of Their Customers, Who Were Paid Unreasonably Low Interest Rates**

18.    Defendants benefit heavily from enrolling customers in the Sweep Program. Defendants admit that WFA and its affiliates have a "conflict of interest" because they "benefit financially from cash balances held in the Bank Deposit Sweep Programs through the 'spread' Affiliated Banks earn on deposits, payments Wells Fargo Advisors receives from Affiliated Banks and Unaffiliated Banks, and incentive compensation" and thus are motivated to enroll customers in the Sweep Program.[6]

---

[3]    *Account Agreement*, *supra* n.1; *Cash Sweep Statement*, *supra* n.2.

[4]    *Id.*

[5]    *Id.*

[6]    *Id.*

19.     Moreover, Defendants admit that WFA has a financial incentive adverse to customers because the Sweep Program allows it to keep greater portions of the payments from Program Banks when it pays lower interest rates to customers:

> [WFA] receives payments from both Unaffiliated and Affiliated Banks, which are calculated as a percentage of the client assets deposited in the Cash Sweep Program. The interest rates paid to client accounts in the Bank Deposit Sweep Program are deducted from these payments, and Wells Fargo Advisors retains the remainder. Accordingly, ***Wells Fargo Advisors has an incentive to pay lower interest rates to participating accounts.***"[7]

20.     Due to this adverse financial incentive, Defendants fail to pay reasonable interest rates to Sweep Program customers and instead pay miniscule, below-market rates ranging from 0.02% to 0.2% depending on the amount deposited.[8]  By comparison, Defendants' competitors pay far higher rates to customers in their own cash sweep programs.  For example, competitor Moomoo's rate is 4.6%,[9] Webull's rate is 4.25%,[10] and Vanguard's rate is 4.15%.[11]

21.     The Sweep Program interest rates are also far below the Federal Reserve's benchmark federal funds rates, currently at 4.75% to 5.00%.[12]

---

[7]  *Id.*

[8]  Wells Fargo, *Wells Fargo Advisors Cash Sweep Rates & Yields*, https://www.wellsfargoadvisors.com/financial-services/account-services/cash-sweep/rates.htm (last accessed Oct. 10, 2024).

[9]  Moomoo, *Boost your uninvested cash with 4.6% APY*, https://www.moomoo.com/us/invest/cashsweep (last accessed Oct. 10, 2024).

[10]  Webull, *Webull High-Yield Case Management*, https://www.webull.com/cash-management (last accessed Oct. 10, 2024).

[11]  Vanguard, *Your cash deserves a good home*, https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last accessed Oct. 10, 2024).

[12]  Federal Reserve, *Economy at a Glance – Policy Rate*, https://www.federalreserve.gov/economy-at-a-glance-policy-rate.htm (last accessed Oct. 10, 2024).

22.    Accordingly, the Sweep Program has begun to attract the attention of federal regulators, forcing Defendants to take corrective actions.  In October 2023, Wells Fargo announced that the SEC was investigating its sweep practices.[13]   In August 2024, Wells Fargo further announced that it was in "resolution discussions" with the SEC[14] and that "[l]ate in second quarter 2024, we increased pricing on sweep deposits in advisory brokerage accounts, which we expect will lower future net interest income."[15]   While Wells Fargo did not announce the details of the rate increase, it estimated that the increase would result in a loss of $350 million in annual revenue.[16]

**Defendants Breached Their Contractual Obligations and Fiduciary Duties Related to the Sweep Program**

23.    Under the Sweep Program Documents, WFA agreed to act as its customers' agent, and thus was contractually obligated to act in its customers' best interests under the Sweep Program.[17] Moreover, WFA undertook a contractual duty to seek and negotiate "reasonable" rates

---

[13]    Wells        Fargo        &        Company,        Form        10-Q,        at        95, https://www.wellsfargo.com/assets/pdf/about/investor-relations/sec-filings/2023/third-quarter-10q.pdf (Oct. 31, 2023).

[14]    Wells        Fargo        &        Company,        Form        10-Q,        at        94, https://www.wellsfargo.com/assets/pdf/about/investor-relations/sec-filings/2024/second-quarter-10q.pdf (Aug. 1, 2024).

[15]    *Id*. at 6.

[16]    AdvisorHub, *Wells Fargo to Lose $350 Million in Revenue as It Raises Rates on Client Cash*, https://www.advisorhub.com/wells-fargo-to-lose-350-million-in-revenue-as-it-raises-rates-on-client-cash/ (July 12, 2024).

[17]    *Cash Sweep Statement, supra* n.2.

of return on its customers' cash balances in the Sweep Program.[18] However, as discussed above, WFA failed to act in its customers' best interests because the interest rates that WFA agreed to pay to its customers were unreasonable compared to the far higher market rates paid by competitors.

24.    WFA's conduct also violated its fiduciary duties under federal law.  As an investment advisor for an actively managed client account, WFA owed a fiduciary duty to its clients under the Advisers Act.[19]  In particular, WFA was obligated to "serve the best interest of its client and not subordinate its client's interest to its own" and not permitted to "place its own interests ahead of the interests of its client."[20]  WFA owed a similar duty of care to its retail clients pursuant to Regulation Best Interest, which required it to act in its retail customers' best interests and prohibited it from placing its own interests ahead of its retail customers' interests.[21]  However, as described above, WFA violated these duties by using the Sweep Program to enrich itself at the expense of customers who were paid unreasonably low interest rates.

**Defendants Made Material Misrepresentations and Omissions Regarding the Sweep Program**

25.    In the Sweep Program Documents, Defendants made material omissions by failing to disclose that, as discussed above, Defendants established and used the Sweep Program to enrich

---

[18]    *Id*.  The Sweep Program Documents state that WFA "assumes no obligation to seek or negotiate interest rates *in excess of* any reasonable rate of interest the Affiliated Banks are willing to credit," thereby assuming a duty to seek and negotiate *reasonable* rates of interest.  *Id.*

[19]    *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 CFR §276 (July 12, 2019) (interpreting Section 206 of the Advisers Act, 15 U.S.C. §80b-6).

[20]    *Id*.

[21]    Securities and Exchange Commission, Regulation Best Interest: The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33320, 17 C.F.R. §240.15l-1 (July 12, 2019).

themselves by paying unreasonably low interest rates to customers in order to increase Defendants'
financial benefits from the Sweep Program.

26.    Moreover, Defendants falsely stated that they were seeking and negotiating
"reasonable" interest rates on behalf of customers when in fact they were coordinating with
Program Banks to pay unreasonably low interest rates to customers in order to increase
Defendants' financial benefits from the Sweep Program.[22]

27.    Further, Defendants misleadingly stated:

- "These rates will vary over time and *may be* lower than rates available to clients making deposits directly with the Program Banks or at other banks."[23]

- "Higher rates of interest than the rates credited by the Affiliated Banks on Expanded Bank Deposit Sweep deposits *may be* available outside of the Cash Sweep Program."[24]

- "We and the Program Banks *may* pay rates of interest on the Expanded Bank Deposit Sweep that are lower than the prevailing market interest rates."[25]

28.    The above statements were misleading because, in reality, the Sweep Program
interest rates paid to WFA customers were *always* significantly less than the customers could
obtain by making direct deposits themselves, *always* significantly less than the customer could
obtain by making deposits outside of the Sweep Program, and *always* significantly less than the
prevailing market rates (i.e., these were not mere possibilities that "may" occur).  In addition, the

---

[22]    *Account Agreement*, *supra* n.1; *Cash Sweep Statement*, *supra* n.2.

[23]    *See, e.g.*, https://web.archive.org/web/20230213070438/https://www.wellsfargoadvisors.com/
bw/wellstrade/forms/589852.pdf (last accessed Oct. 10, 2024).

[24]    *Id.*

[25]    *Id.*

statements were made in conjunction with Defendants' representation that WFA was paying "reasonable" interest rates to Sweep Program customers, thereby indicating that the interest payments would not always be significantly less than those available elsewhere.

29.     In September 2023, around the time Wells Fargo announced the SEC's investigation into its sweep practices, Defendants amended some of its disclosures regarding its interest payments under the Sweep Program, including the following:

- "These rates will vary over time and are ***typically lowe***r than rates available to clients making deposits directly with the Program Banks or at other banks."[26]

- "The Program Banks pay rates of interest on the Bank Deposit Sweep Program deposits that are ***significantly less*** than the spread those banks earn on deposits."[27]

- "You may elect not to participate in the Cash Sweep Program and instead periodically invest cash balances directly in available money market mutual funds or other products offered as direct investments outside of the Cash Sweep Program. Those direct investment options would ***likely generate a higher rate of interest or yield*** than the Cash Sweep Program."[28]

- "The interest rates paid to client accounts in the Bank Deposit Sweep Program are deducted from these payments, and Wells Fargo Advisors retains the remainder.  Accordingly, Wells Fargo Advisors ***has an incentive to pay lower interest rates to participating accounts***.  Note that the fee Wells Fargo Advisors receives from the Program Banks ***usually exceeds*** the interest paid to participating client accounts by a ***substantial amount***.  Moreover, due to the contractual arrangements in place between the Unaffiliated Banks and Wells Fargo Advisors, the rates paid out to non-advisory accounts ***will be substantially lower*** than the Federal Funds Effective Rate and will not increase as quickly as the Federal Funds Effective Rate."[29]

---

[26]   *Id*.

[27]   *Account Agreement*, *supra* n.1; *Cash Sweep Statement*, *supra* n.2.

[28]   *Id*.

[29]   *Id*.

30.    Through these amended disclosures, Defendants admitted that their prior disclosures about the Sweep Program, discussed above, were false and misleading and omitted material facts about Defendants' incentive to pay, and payment of, unreasonably low interest rates to customers.

**Defendants Violated the RICO Statute**

31.    Defendants violated the RICO Statute through their implementation of the Sweep Program.

32.    WFA is an "enterprise" within the meaning of the RICO Statute.  Through WFA, Defendants knowingly and intentionally devised and operated the Sweep Program as a scheme to defraud customers, including Plaintiff and the Class.  Defendants used the Sweep Program to benefit and enrich themselves through, among other things, the payment of unreasonably low interest rates to customers on money deposited into the Sweep Program.

33.    The Sweep Program involved commercial activities across state lines, including Defendants' distribution of the Sweep Program Documents to customers, and Defendants' receipt and transfer of money deposited by customers.

34.    Through the Sweep Program, Defendants conducted and participated in a pattern of racketeering activity within the meaning of the RICO Statute ("Racketeering Acts").  Defendants' Racketeering Acts included indictable, predicate offenses under 18 U.S.C. §§1341 and 1343 based on Defendants' fraudulent use of interstate mail and wire communications, including posting the materially false and misleading Sweep Program Documents on their public website and distributing them to customers throughout the country.

35.    The Racketeering Acts were related in that they were taken in furtherance of Defendants' Sweep Program scheme.  The Racketeering Acts occurred, and continue to occur, regularly and continuously over a multi-year period during the operation of the Sweep Program.

36.    Defendants conducted the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agreed to the overall objectives of the conspiracy and, through the Racketeering Acts, participated in a common course of conduct in furtherance of the Sweep Program scheme, including posting the materially false and misleading Sweep Program Documents on their public website and distributing them to customers throughout the country.

37.    As Sweep Program customers, Plaintiff and the Class were damaged by Defendants' Racketeering Acts due to Defendants' payment of unreasonably low interest rates on the money customers deposited into the Sweep Program.

## CLASS ACTION ALLEGATIONS

38.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all persons who had cash deposits or balances in the Sweep Program ("Class").  Excluded from the Class are Defendants, the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

39.    The Class members are so numerous that their individual joinder is impracticable. While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes that Class members number in the thousands, and are geographically dispersed, because Wells Fargo's wealth management services oversee nearly $1.9 trillion in client assets through nearly 12,000 financial advisors across the United States

40.    Plaintiff's claims are typical of Class members' claims because Plaintiff was a Wells Fargo customer whose cash deposits with Wells Fargo were subject to the Sweep Program,

and therefore Plaintiff's claims, and those of all other Class members, arise from the same wrongful conduct by Defendants alleged herein.

41.    Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel experienced and competent in complex class actions litigation.  Plaintiff has no interests that are contrary to, or in conflict with, the members of the Class that Plaintiff seeks to represent.

42.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class or a risk of adjudications that, as a practical matter, would be dispositive of the interests of other Class members who were not parties to the adjudications or would substantially impair or impede the ability of such Class members to protect their interests.

43.    Because Defendants have acted or refused to act on grounds that apply generally to the Class, final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

44.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

45.    Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members in that Defendants have acted on grounds

generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated the laws as alleged herein;

(b)     whether Defendants owed fiduciary duties to members of the Class in connection with the Sweep Program;

(c)     whether Defendants breached their fiduciary duties to members of the Class in connection with the Sweep Program;

(d)     whether Defendants violated the Advisers Act;

(e)     whether Defendants violated the RICO Statute;

(f)     whether Defendants made material misrepresentations and/or omissions regarding the Sweep Program;

(g)     whether Defendants were unjustly enriched by their wrongful conduct;

(h)     whether the members of the Class sustained damages as a result of the alleged wrongful conduct by Defendants, and, if so, the appropriate measure of damages; and

(i)     whether the members of the Class are entitled to attorneys' fees and costs and, if so, the appropriate amount of attorneys' fees and costs.

## COUNT I

## BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

46.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

47.     WFA was the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  Wells Fargo owns and controls WFA.

48.     Defendants owed fiduciary duties to Plaintiff and the Class, including a duty to act in the best interests of, and deal fairly and honestly with, Plaintiff and the Class.

49.     Defendants violated their duty to act in the best interests of Plaintiff and the Class by using the Sweep Program to enrich themselves at the expense of customers who were paid unreasonably low interest rates, as described above.

50.     Defendants also violated their duty to deal fairly and honestly with Plaintiff and the Class by making material misrepresentations and omissions in the Sweep Program Documents, as described above.

51.     Further, Defendants violated their duty to act with reasonable care to verify the truthfulness of the information set forth in the Sweep Program, which were materially misleading and omitted material facts for the reasons described above.

52.     As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and the Class have suffered damages and are entitled to recover such damages from Defendants.

## COUNT II

## VIOLATION OF THE INVESTMENT ADVISERS ACT OF 1940
## AGAINST ALL DEFENDANTS

53.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

54.     WFA is registered as an investment adviser under the Advisers Act.  Wells Fargo owns and controls WFA.

55.     WFA violated Section 206 of the Advisers Act by failing to serve the best interests of its clients, Plaintiff and the Class, and placing its own interests ahead of the interests of Plaintiff and the Class in connection with the Sweep Program, as further alleged herein.  *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 CFR § 276 (July 12, 2019).

56.     The Account Agreement should be deemed void pursuant to Section 215 of the

Advisers Act, which provides that every

> (b) . . . contract made in violation of any provision of this title and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this title, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

57.     Accordingly, Plaintiff seeks rescission of the Account Agreement and restitution of

the consideration given pursuant to its purported terms.

**COUNT III**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
AGAINST ALL DEFENDANTS**

58.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth

herein.

59.     Plaintiff entered into the Account Agreement with WFA concerning the Sweep

Program.  Wells Fargo owns and controls WFA.

60.     Implicit in the Account Agreement was a duty of good faith and fair dealing.

61.     Defendants breached their duty of good faith and fair dealing by failing to provide

Plaintiff and the Class with fair and reasonable interest rates on their cash sweep balances in the

Sweep Program.   Rather, the interest rates provided by Defendants were below market and

unreasonably low.   As such, Defendants denied Plaintiff and the Class the full benefit of their

bargain under the Account Agreement.

62.     As a direct and proximate result of Defendants' breach of the implied covenant of

good faith and fair dealing, Plaintiff and the Class sustained damages.

**COUNT IV**

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT, 18 U.S.C. §1962(c)-(d),
AGAINST ALL DEFENDANTS**

63.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

64.     This claim arises under 18 U.S.C. §1962(c)-(d) of the RICO Statute, which provide in relevant part:

> (c)     It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

> (d)     It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

65.     At all relevant times, Defendants were "person[s]" because they were capable of holding a legal or beneficial interest in property.

66.     WFA was an enterprise engaged in interstate commerce.   Through WFA, Defendants knowingly and intentionally devised and operated the Sweep Program as a scheme to defraud investors.   Defendants used the Sweep Program to enrich themselves by paying unreasonably low interest rates to Sweep Program customers.

67.     Defendants conducted and participated in multiple, related Racketeering Acts for the purpose of implementing the Sweep Program.   The Racketeering Acts, which occurred, and continue to occur, regularly and continuously during the operation of the Sweep Program over a multi-year period, constitute a "pattern of racketeering activity."   The Racketeering Acts were made possible by the regular, repeated, and continuous use of the employees, facilities, and services of WFA.

68.    Defendants' Racketeering Acts included the following indictable, predicate offenses:

(a)    **Mail Fraud**: Defendants violated 18 U.S.C. § 1341 by sending and receiving materials via United States mail and commercial interstate carriers for the purpose of conducting the fraudulent Sweep Program scheme, including the Sweep Program Documents.  As described above, the Sweep Program Documents contained material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

(b)    **Wire Fraud**: Defendants violated 18 U.S.C. §1343 by transmitting and receiving writings and sounds by means of interstate wire communication for the purpose of conducting the fraudulent Sweep Program scheme.  The writings included the Sweep Program Documents, which were posted on Defendants' public website.  As described above, the Sweep Program Documents contained material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

69.    Defendants conducted the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agreed to the overall objectives of the conspiracy and, through the Racketeering Acts, participated in a common course of conduct in furtherance of the Sweep Program scheme, including mailing and transmitting the Sweep Program Documents to customers.

70.    Plaintiff and the Class suffered damages by reason of Defendants' payment of unreasonably low interest rates on their Sweep Program deposits, in violation of 18 U.S.C. §1962(c)-(d).

71.    Plaintiff's and the Class's injuries were directly and proximately caused by Defendants' racketeering activity.

## COUNT V

### GROSS NEGLIGENCE AGAINST ALL DEFENDANTS

72.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

73.    WFA was the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  Wells Fargo owns and controls WFA.

74.    Defendants owed Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the Sweep Program.

75.    Defendants' conduct with respect to the Sweep Program, as described above, was grossly negligent.  By failing to provide Plaintiff and the Class with fair and reasonable interest rates on their cash sweep balances in the Sweep Program, Defendants demonstrated a lack of care and reckless disregard for their customers' interests and an extreme departure from the ordinary standard of care.

76.    Defendants' gross negligence directly and proximately caused harm to Plaintiff and the Class.

## COUNT VI

### NEGLIGENT MISREPRESENTATIONS AND OMISSIONS AGAINST ALL DEFENDANTS

77.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

78.    WFA was the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  Wells Fargo owns and controls WFA.

79.     Defendants owed Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the Sweep Program.

80.     Defendants negligently made material misrepresentations and omissions in the Sweep Program Documents, as described above.

81.     Plaintiff and the proposed Class justifiably relied on Defendants' Sweep Program Documents and accordingly deposited and maintained cash balances in the Sweep Program to their detriment.

82.     Defendants' material misrepresentations and omissions directly and proximately caused harm to Plaintiff and the members of the proposed Class.

## COUNT VII

## UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

83.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

84.     Defendants financially benefited from the unlawful acts alleged herein by paying Plaintiff and the Class unreasonably low and below market interest payments on their Sweep Program balances.  These unlawful acts caused Plaintiff and the Class to suffer injury and monetary loss.

85.     As a result of the unlawful acts alleged herein, Defendants have been, and continue to be, unjustly enriched at the expense of Plaintiff and the Class.

86.     Defendants have received, and are holding, funds belonging to Plaintiff and the Class, which in equity Defendants should not be permitted to keep but should be required to refund to Plaintiff and the Class.

**COUNT VIII**

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349
AGAINST ALL DEFENDANTS**

87.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

88.     Defendants selected New York law as the law governing the Account Agreement.

89.     Defendants' acts and practices with respect to the Sweep Program, as described above, constitute unlawful, unfair, misleading, and deceptive business acts and practices in violation of Section 349 of New York's General Business Law ("GBL").

90.     Defendants' misleading and deceptive business acts and practices with respect to the Sweep Program adversely impacted Plaintiff and the Class, and therefore constitute consumer-oriented conduct under GBL §349, which resulted in direct harm to Plaintiff and the Class.

91.     Accordingly, Plaintiff and the Class seek appropriate relief under GBS §349, including injunctive relief and damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on its own behalf and on behalf of the Class, prays for relief and judgment, as follows:

A.      Declaring that this action is a proper class action and certifying Plaintiff as Class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel, Robbins Geller Rudman & Dowd LLP, as Class Counsel for the proposed Class;

B.      Awarding compensatory damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding treble damages in favor of Plaintiff and the Class;

D.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

E.      Ordering rescission of the Account Agreement and restitution of all fees and other benefits received by Defendants thereunder; and

F.      Such other and further relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  October 11, 2024                    ROBBINS GELLER RUDMAN
                                                        & DOWD LLP
                                                    STEPHEN R. ASTLEY
                                                    ANDREW T. REES
                                                    RENE A. GONZALEZ


                                                    *s/ Stephen R. Astley*
                                                    STEPHEN R. ASTLEY

                                                    225 NE Mizner Boulevard, Suite 720
                                                    Boca Raton, FL  33432
                                                    Telephone:  561/750-3000

- 22 -

ABRAHAM FRUCHTER & TWERSKY LLP
JACK G. FRUCHTER
450 7th Ave 38th Floor
New York, NY  10123
Telephone:  212/279-5050

*Attorneys for Plaintiff*